107 F.3d 873
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Willie J. SMITH, Petitioner-Appellant,
v.
Daniel R. McBRIDE, Respondent-Appellee.
 No. 96-1463.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 5, 1997.*
Decided Feb. 05, 1997.
 
 Before FLAUM, MANION and EVANS, Circuit Judges.
 ORDER
 While serving three, concurrent twenty-year sentences at the Westville Correctional Center, Willie Smith filed a petition for a writ of habeas corpus, 28 U.S.C. § 2254, challenging his conviction for burglary, robbery, and conspiracy to commit robbery. He alleged that the evidence was insufficient to sustain his convictions and that his conviction was obtained in violation of due process. Smith now appeals from the district court's judgment finding that Smith procedurally defaulted his due process claim and that his conviction was supported by sufficient evidence. (R. at 12.) Because Smith has not demonstrated that he is entitled to relief pursuant to § 2254, we affirm.
 Notably, Smith's previous habeas petition challenging his convictions based on an alleged due process violation was dismissed by the district court without prejudice for failure to exhaust his state court remedies. (Loose Pldgs., Vol. 2, Exh. 4, Order.) Consequently, Smith returned to Indiana's trial court where he claimed a due process violation stemming from the trial judge's alleged lack of judicial authority to accept the guilty pleas of the state's witnesses (his co-conspirators) who testified at his trial. The trial court vacated the filing of his post-conviction petition, however, noting that it was Smith's second successive post-conviction petition and that Smith failed to follow Indiana's Post-Conviction Rule 1(12)(a) that requires a petitioner wishing to file a successive post-conviction petition to seek leave to do so from the Indiana Court of Appeals or the Indiana Supreme Court.[1] (Loose Pldgs., Vol. 2, Exh. 5, Order.) Instead of complying with Indiana's procedure, Smith made several subsequent filings in Indiana's trial and appellate courts and now is effectively precluded by Indiana's state courts from obtaining collateral relief from his convictions.[2]
 Pointing to this procedural history, the district court dismissed Smith's due process claim based on his failure to follow Indiana's procedural rules for filing successive post-conviction petitions. However, the district court addressed Smith's sufficiency claim on the merits but found that the evidence was sufficient to sustain his convictions.[3] (R. at 12.) On appeal, Smith challenges only the district court's dismissal of his due process claim and waives any claim concerning the sufficiency of the evidence. See Johnson v. Duneland Sch. Corp., 92 F.3d 554, 557 (7th Cir.1996) (stating that issues raised in district court but not reasserted and supported in this court are waived). Smith argues that the district court erred in finding he procedurally defaulted his due process claim because he exhausted this claim in Indiana's state courts, and thus, that he is entitled to federal habeas review. (Pet.'s Br. at 5) (citing Markum v. Clark, 978 F.2d 993 (7th Cir.1995)). Alternatively, he argues that the invalidity of the state witnesses' guilty pleas resulted in insufficient evidence against him and a miscarriage of justice sufficient to overcome the procedural default of his due process claim.
 
 
 1
 Contrary to Smith's belief, Markum does not pave the way to federal review of his due process claim. Even though his claim may properly be deemed exhausted in the sense that he has no remedy in state court, id. at 995, he is not entitled to federal habeas review of his due process claim unless the "last [state] court to address [this claim] reach[ed] the merits without invoking a rule of forfeiture." Hogan v. McBride, 74 F.3d 144, 146 (7th Cir.1996). Indiana's trial and appellate courts clearly invoked a rule of forfeiture in denying Smith's successive post-conviction petitions raising his due process claims. See supra notes 1-2. Thus, we cannot review his claim unless he shows "cause" for and "prejudice" from the failure to raise his due process claim in accordance with Indiana's procedural rules, see Coleman v. Thompson, 501 U.S. 722 (1991); Wainwright v. Sykes, 433 U.S. 72 (1977), or that the error caused a "miscarriage of justice" by convicting one who is actually innocent, Schlup v. Delo, 115 S.Ct. 851 (1995); Murray v. Carrier, 477 U.S. 478 (1986). Smith argues that he suffered a miscarriage of justice because the judge, who accepted guilty pleas from several of the state's witnesses, allegedly lacked judicial authority to do so, and therefore deprived him of a fair trial and due process of law. (Pet.'s Br. at 6-7) (pointing to trial court minute sheets showing that the officer accepting his co-conspirators' guilty pleas titled himself as judge on one occasion, but as master commissioner and pro-tem on another). Because of the judge's alleged lack of authority, Smith contends that it was unfair for the state to prove its case based on their testimony and to deliberately deceive the jury by not revealing that the state's witnesses were not properly adjudicated. (Pet.'s Br. at 8.) Smith's arguments do not demonstrate a miscarriage of justice sufficient to overcome his procedural default. The miscarriage of justice standard requires that Smith show he is actually innocent of the crime of which he was convicted, such that "it is more likely than not that no reasonable juror would have found [Smith] guilty beyond a reasonable doubt." Schlup, 115 S.Ct. at 867 (1995). Smith's argument concerning judicial authority makes no allegation of actual innocence. Moreover, his arguments regarding the sufficiency of the evidence challenge the credibility of the witnesses' testimony rather than demonstrate his actual innocence.
 
 
 2
 Accordingly, we AFFIRM the district court's judgment denying Smith's § 2254 petition.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 After Indiana's Supreme Court affirmed Smith's convictions on direct appeal (where he challenged the sufficiency of the evidence), he filed his first post-conviction petition on this same ground. Instead of appealing the trial court's denial of that petition, he filed another post-conviction petition, alleging he had "further evidence" to challenge the state's conspiracy charges which established the insufficiency of the state's evidence. The state trial court denied his claim, noting that it was frivolous and was the same claim as raised in his first petition from which he failed to file an appeal. (Loose Pldgs., Vol. 2, Exh. 2, Order.)
 
 
 [2]
 Smith's appeal of the trial court's order vacating his second successive petition was construed by the Court of Appeals of Indiana as a third successive post-conviction petition. Likewise, Indiana's Supreme Court denied his request to issue a writ of mandamus. Meanwhile, still without complying with Indiana's Post-Conviction Rule 1(12)(a), Smith filed two more successive post-conviction petitions in Indiana's trial court. These filings were also vacated for failure to comply with Rule 1(12)(a). Although Smith eventually appealed from the previous denial of one of his successive post-conviction petitions, the Court of Appeals of Indiana dismissed this appeal based on Smith's delay in proceeding. It is now evident that Smith's time has passed for seeking collateral relief from his convictions in Indiana's state courts
 
 
 [3]
 In finding the evidence sufficient to support Smith's convictions, the district court noted that Elfaygo Thomas testified (pursuant to a plea agreement) that he, Smith, and Ronald Slaughter (Smith's brother), conspired to rob an elderly man living in their neighborhood who was known to carry large amounts of money on his person. According to Thomas, Smith occupied the attention of the elderly man's next door neighbors while Thomas and Slaughter burglarized the elderly man's home, and upon his return, robbed and shot him in the mouth. (The victim died three weeks later from an apparently unrelated heart attack.) Slaughter's pre-trial statement verified many aspects of Thomas' testimony, although at trial, Slaughter claimed that Smith was not involved. Smith's girlfriend also testified that she had overheard the conversation between the three men regarding the planning of the burglary and robbery. (R. at 12.)