**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 13, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ABRON ARRINGTON,

    Petitioner-Appellant,

v.

MICHAEL WILLIAMS; ATTORNEY
GENERAL OF THE STATE OF
COLORADO,

    Respondents - Appellees.

No. 05-1221

District of Colorado

(D.C. No. 01-Z-1447)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **HARTZ**, and **McCONNELL**, Circuit Judges.

This order and judgment lays to rest a second appeal concerning a petition

for a writ of habeas corpus filed by Abron Arrington, a state prisoner proceeding

*pro se*. Because Mr. Arrington's constitutional claims are procedurally defaulted

and he has failed to satisfy the "actual innocence" exception for procedural

default, we affirm the judgment of the district court.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. Factual and Procedural Background

Mr. Arrington is serving a life sentence for first-degree felony murder, second-degree burglary, and aggravated robbery at the Centennial Correctional Facility in Canon City, Colorado. He filed an application for a writ of habeas corpus under 28 U.S.C. § 2254 on July 27, 2001, while proceedings for postconviction relief in state court were still pending. The district court dismissed the petition as procedurally barred on October 30, 2001, but in October 2002 this Court held that "[b]ecause of the unusual posture of this case," the district court "lacked all the information necessary" to decide the issue of procedural default. *Arrington v. Williams*, 51 Fed. Appx. 804, 806 (Oct. 15, 2002) (unpublished opinion). We granted a certificate of appealability (COA) and remanded Mr. Arrington's case with instructions to "re-examine whether Arrington's claims are procedurally barred." *Id.* at 806.

On remand, in April 2005, the district court held that Mr. Arrington had indeed procedurally defaulted his constitutional claims by failing to seek discretionary review of his request for postconviction relief from the Supreme Court of Colorado. In rejecting Mr. Arrington's argument that he qualifies for the "actual innocence" exception for procedural default, the district court held:

> Mr. Arrington fails to present any new reliable evidence or make any argument relevant to that exception to the procedural default rule. He merely cites to the testimony of witnesses who did testify, to testimony that apparently was presented to his defense counsel but was not presented at trial, and to testimony that he speculates would

have been relevant at trial. This argument does not raise a claim of actual innocence.

R. Doc. 25, at 7.

In one of his pleadings before the district court, however, Mr. Arrington had submitted excerpts from proceedings in August 1996 concerning a request for state postconviction relief by Monte Hankenson, a government witness at Mr. Arrington's trial in November 1993. The excerpts suggested that Mr. Hankenson had admitted to committing perjury at Mr. Arrington's trial, but that—in the words of a senior trial court judge—"he had gotten away with it." Resp. to Order to Show Cause, October 19, 2001, at 29–30. This Court granted a second COA on January 9, 2006, "limited to whether Mr. Arrington satisfies the 'actual innocence' exception for claims otherwise barred due to procedural default, based on evidence that Mr. Hankenson committed perjury at Mr. Arrington's trial." Order of Jan. 9, 2006, at 4; *see Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

## II. Discussion

To qualify for the "actual innocence" exception, Mr. Arrington must provide evidence of a "fundamental miscarriage of justice," meaning that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986). That standard requires Mr. Arrington to "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). As a result, fundamental miscarriages of justice are "extremely rare." *Id.* The petitioner bears the burden to present new evidence so persuasive that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House v. Bell*, 126 S. Ct. 2064, 2077 (2006).

Mr. Arrington argues that Mr. Hankenson committed perjury in two ways, each of which demonstrates his actual innocence. First, according to Mr. Arrington, the excerpts reveal that Mr. Hankenson had reached a deal with prosecutors to reduce his sentence in exchange for his testimony, contradicting Mr. Hankenson's testimony at trial that no such deal existed. Second, according to Mr. Arrington, the excerpts show that Mr. Hankenson committed perjury "regarding matters of material fact." Response to Order to Show Cause 27.

## A. Perjury Concerning the Existence of a Deal With Prosecutors

Before the district court, Mr. Arrington submitted short excerpts—no more than a few sentences—from several hearings that made mention of negotiations between Mr. Hankenson and prosecutors. At an August 15, 1996 hearing on Mr. Hankenson's motion for sentence reconsideration under Rule 35(b) of the Colorado Rules of Criminal Procedure, a prosecutor told the court:

> Judge[,] this would normally be well beyond the time limit where the
> court would consider a[ ]35(b). We're here because part of the
> original understanding was that by mutual agreement that the court

-4-

would retain jurisdiction for this purpose. . . . So Mr. Hankenson might be a[ ]witness as he was in some of the later trials.

*Id.* at 26 (emphasis removed).[1]  At another hearing, the date and subject matter of which are not disclosed in Mr. Arrington's pleadings, an attorney for co-defendant James Carroll called Lee Rosenbaum, Mr. Hankenson's attorney, to testify about "a conversation that was had between [Mr. Rosenbaum], [J]udge Railey, and [a prosecutor] about a plea agreement between Hankenson and the prosecution." *Id.* (emphasis removed).  Mr. Arrington argues that his conviction was predicated on the prosecution's presentation of Mr. Hankenson as "thoroughly rehabilitated, pristine, and free of any underlying motive for testifying," *id.* at 29, and that proof that Mr. Hankenson lied about the existence of an agreement therefore tends to show actual innocence.

The trouble is that these excerpts do not contradict Mr. Hankenson's testimony.  According to the State, the prosecution agreed to allow Mr. Hankenson to seek a sentence reduction outside the normal time limit, but did not agree to recommend a lower sentence.  Answer Br. 17 (characterizing the

---

[1]Although we have described the materials submitted by Mr. Arrington as "excerpts," he has not provided complete or partial transcripts of the hearings. Instead, he has retyped portions of the transcripts in his briefs, introducing numerous grammatical errors, adding emphasis without so indicating, and occasionally inserting his own comments parenthetically.  Needless to say, our inability to corroborate Mr. Arrington's transcription of the transcripts affects the weight of the evidence. *See, e.g.*, R. Doc. 3, App. Doc. 22, at 9 (excerpting the same portion of the transcript of Mr. Hankenson's sentence reconsideration hearing, but using noticeably different language).

agreement as a "procedural favor," not a promise of sentence reconsideration). The excerpts provided by Mr. Arrington are fully consistent with such a concession: Mr. Hankenson himself alerted the jury of a pending hearing to reconsider his sentence, which had been "put off" until after Mr. Arrington's trial. *People v. Arrington*, No. 00CA1854, at 8 (Colo. Ct. App. June 13, 2002) (unpublished).[2] Although Mr. Arrington derides this line of argument as "sheepish waffling" that prevented his counsel from "pin[ning] down Hankenson" at trial, Reply Br. 4, he has not pointed to any statements by Mr. Hankenson that misrepresent the nature of the "understanding" he had reached with prosecutors. These excerpts therefore do not establish that Mr. Hankenson lied at Mr. Arrington's trial.

Moreover, evidence that Mr. Hankenson mischaracterized the agreement with prosecutors would not have affected the balance of the evidence such that "any reasonable juror would have reasonable doubt" about Mr. Arrington's guilt. *House*, 126 S. Ct. at 2077. Evidence of the deal could have suggested that Mr. Hankenson could not be trusted because he hoped to obtain a reduced sentence. Impeachment evidence seldom provides a basis for finding a miscarriage of justice, however, as it is "a step removed from evidence pertaining to the crime itself." *Calderon v. Thompson*, 523 U.S. 538, 563 (1998). Also, the jury already

---

[2]At the State's request, we take judicial notice of the unpublished decisions of the state courts in Mr. Arrington's direct appeal and request for postconviction relief. *See* Answer Br., Attachment B.

had ample reason to doubt Mr. Hankenson's testimony. At trial, he not only "acknowledged he had lied under oath in a prior proceeding and at his sentencing hearing," but admitted that "he was almost charged with perjury" and only escaped prosecution because "the district attorney agreed not to do so." *Arrington*, No. 00CA1854, at 8. He even told the jury that he remained hopeful for leniency at his upcoming sentencing hearing. Whether the jury found Mr. Hankenson's testimony credible despite these admissions, or based its verdict on other evidence at trial, evidence of a "procedural favor" granted by prosecutors could not have changed the result.

Mr. Arrington's reliance on *Giglio v. United States*, 405 U.S. 150 (1972), is misplaced. That case held that, under some circumstances, the government's failure to disclose the existence of a plea agreement involving a key witness may violate due process. *Id.* at 155. But Mr. Arrington procedurally defaulted his due process claim, and we granted a COA only as to whether the new evidence submitted in his pleadings establishes his "actual innocence." Even if Mr. Arrington's due process claim were obviously meritorious—which, we hasten to add, it is not—he can only excuse his procedural default through "new reliable evidence" of his innocence. *Schlup*, 513 U.S. at 324. Because the evidence before us does not establish that Mr. Hankenson lied about the existence or nature of an agreement, and such evidence would not have made a difference anyway,

Mr. Arrington does not qualify for the "actual innocence" exception on those grounds.

### B. Perjury as to "Matters of Material Fact"

The only other piece of new evidence supporting Mr. Arrington's petition is a second, longer excerpt from Mr. Hankenson's Rule 35(b) sentencing reconsideration hearing in August 1996. At the hearing, Mr. Rosenbaum admitted that his client had repeatedly committed perjury at prior proceedings:

> HANKENSON'S ATTORNEY: He had indicated to me[,] [J]udge, that he had perjured himself both in[ ]front of [J]udge Railey, as well as in front of—as well as that day during his testimony.
> I told him not to tell me anything more; that I wanted to find out what I needed to do, what he needed to in this regards.
> Judge Hall's advice to me was that the sum and substance of the perjury did not need to be disclosed, did not need to be put on the record, and that in essence, he had gotten away with it.
> I went back and talked to Mr. Hankenson and told him just that; that pursuant to my discussions with a senior judge who I asked for guidance, indicated that I did not need to come forward and that neither did Mr. Hankenson, even though the trial was on going [sic].
> He also indicated—I also indicated to Mr. Hankenson what perjury meant, the rami[fi]cations. Did a little research that day, [J]udge[,] as to how to purge yourself from perjury, and I'm sure the Court's aware of the statute. However I did[n']t believe that was going to be a complete defense because he also perjured himself in the other trial as well as in front of [J]udge Railey at sentencing, where I did go back and check and he was a sworn witness.
> So for all those purposes I told him quite frankly it would be best if he said nothing, 'cause that was the advice I had gotten and that was the advice I gave him. I also indicated that he was going to be reconsidered at some point and obviously this would have an impact on it.

Response to Order to Show Cause 30 (emphasis removed) (Mr. Arrington's comments removed). On a careful reading, the excerpt refers to perjury on as many as four occasions: (1) "in[ ]front of [J]udge Railey," (2) "in front of [J]udge Railey at sentencing," (3) "that day during his testimony" as part of "the trial [that] was on going," and (4) "in the other trial." *Id.*

None of these statements, however, refers to perjury *at Mr. Arrington's trial*, making it impossible for us to tell whether the evidence is relevant to the question of actual innocence. The first two references are irrelevant because they refer to proceedings before Judge Matt Railey, who presided at Mr. Hankenson's trial, not Judge David Parrish, who presided at Mr. Arrington's trial. The third and fourth may be relevant, as they appear to describe two different trials: the "on going" trial and "the other trial." Yet by August 1996, Mr. Hankenson had already testified at a minimum of three trials—Mr. Carroll's first trial in May 1993, Mr. Arrington's retrial in November 1993, and Mr. Carroll's retrial in May 1995—and potentially more.[3] Without the complete transcript, or at least a few additional pages to provide context, we are at a loss as to when Mr. Hankenson's perjury took place.

For two reasons, our best guess is that the excerpts do not describe perjury at Mr. Arrington's trial. First, Mr. Rosenbaum appears to be describing the day

_____

[3]The record does not disclose, for example, whether Mr. Hankenson testified at his own trial in 1992 or at Mr. Arrington's first trial in 1990.

he learned of Mr. Hankenson's perjury for the first time, in the midst of an "on going" trial. *See* Response to Order to Show Cause 30 (recounting that Mr. Rosenbaum "told him not to tell me anything more" and promptly sought advice from a senior judge). Second, the excerpt makes clear that Mr. Rosenbaum advised his client that "it would be best if he said nothing" because "the sum and substance of the perjury did not need to be disclosed." *Id.* Neither of those details match the Colorado courts' description of Mr. Arrington's trial, at which Mr. Hankenson publicly acknowledged his past perjury. *See Arrington*, No. 00CA1854, at 8.

Even assuming the excerpts refer to perjury at Mr. Arrington's trial, however, it is impossible for us to evaluate any effect on Mr. Arrington's "actual innocence" because we do not know what Mr. Hankenson lied about. According to Mr. Arrington, these excerpts "show that not only did [Mr. Hankenson] perjure himself at [Mr. Arrington's] trial regarding his [eligibility for sentence reconsideration], but he also perjured himself regarding matters of material fact." Response to Order to Show Cause 27. The excerpts before us simply do not support that claim, and in his earlier pleadings Mr. Arrington admitted as much. *See* R. Doc. 3, App. Doc. 22, at 11 ("[N]either the prosecution nor Mr. Hankenson has ever disclosed the exact nature of what he continued to lie about while testifying at Mr. Arrington's trial."). For all we know, Mr. Hankenson's perjury could have concerned the existence of a deal with prosecutors, other facts going

to his credibility as a witness, or minor facts of no consequence for the jury. It is Mr. Arrington's burden to provide "new reliable evidence" such that any reasonable juror would have found him guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 324. The excerpts provided in Mr. Arrington's pleadings do not satisfy that standard.

### III. Conclusion

Because Mr. Arrington has not provided evidence that satisfies the "actual innocence" exception, his petition for a writ of habeas corpus was properly denied on grounds of procedural default. We therefore **AFFIRM** the judgment of the district court.

Entered for the Court,

Michael W. McConnell
Circuit Judge