COLE, Circuit Judge,
concurring.
I concur in the majority’s opinion, but write separately to express my distress over the harsh edges of AEDPA and our habeas jurisprudence, displayed so dramatically in this case.
Edward Pinchón is serving a life prison sentence for the murder of Leslie Handy. At the time of the murder, Pinchón and Handy were carrying on a sexual relationship, even though Handy was in his mid-forties, and Pinchón was seventeen years old and mildly mentally retarded.
*645 At the state post-conviction hearing, an academic counselor at Pinchon’s correctional facility testified that Pinchón “had consistently tested lower than the fifth grade level in reading ability, which meant his reading ability was ‘very limited.’” Pinchon v. State, No. M2003-00816-CCA-R3-PC, 2004 WL 193055, at *2 (Tenn. CrimApp. Jan.28, 2004). He believed that Pinchon’s “ability to read and follow instructions with respect to meeting a deadline would depend on how complicated the instructions were and whether the vocabulary was beyond his comprehension.” Id. Further, Dr. Lynn McRainey, a school psychologist and psychological examiner who interviewed and tested Pinchón and reviewed his psychological records dating back to when he was in kindergarten, testified that “she determined that [Pinchón] had a full scale IQ score of 67, ‘which falls in the range of mild mental retardation.’ ” Id. She noted that Pinchón “ha[d] a history of being certified as language impaired,” and that she believed his IQ always had fallen within a range of 64 to 71. Id. In her opinion, he was “unable to plan ahead to meet a deadline.” Id.
Despite his intellectual deficiencies, Pinchon’s case was transferred from juvenile to criminal court, where he was tried as an adult and convicted. Pinchón appealed his conviction, and the Tennessee Court of Criminal Appeals affirmed. He appealed that decision, but the Tennessee Supreme Court denied Pinchón leave to appeal on December 11, 2000.
Within three months of this denial, Pinchón instituted this habeas petition in federal district court, but did not plead an ineffective-assistance-of-counsel claim. Apparently unclear about the status of his state appeal, Pinchón wrote to the Tennessee Supreme Court in September 2001 asking for information on “the status of [his] pending Motion to Reconsider.” (Pinchón app. 557.) What he received in response was a handwritten note stating: “On 12/29/00, the case was mandated (closed) & jurisdiction was returned to the trial court. Nothing currently pending because the case is closed.” (Id.) Pinchón, with no counsel and only the help of a fellow inmate in the prison library, filed his state petition for post-conviction relief on December 28, 2001, which included his ineffective-assistance-of-counsel claims. It appears as though Pinchón thought that December 29, 2000, the date referenced in the handwritten note, was the “the date of the final action of the highest state appellate court.” See Tenn.Code Ann. § 40-30-102(a). Pinchón was mistaken. The statute actually refers to the date Pinchon’s petition for leave to appeal was denied, December 11, 2000. Thus, his petition was filed seventeen days late. This mistake, made by an incarcerated young man with the reading skills of a fifth-grader and no legal counsel, together with habeas counsel’s failure to pursue an amendment on a timely basis, cost him his right ever to have any court hear the substance of his claim that he was denied effective assistance of counsel.
In this case, procedural bars have conspired to keep any court from determining whether Pinchón was denied his right to effective counsel, despite the fact that, in my opinion, Pinchón diligently pursued his post-conviction legal remedies both in state and federal court. Pinchón filed his original federal habeas petition several days before the AEDPA statute of limitations began to run. He pursued his claims of ineffective assistance of counsel in state court within twelve months of his case being mandated by the state appellate court. However, the state courts declined to hear these claims on the merits because his petition was filed seventeen days late, notwithstanding the fact that his lateness appears to be attributable to his receipt of *646 the opaque, handwritten note from the state court and his misreading of a statute that any layperson — let alone an incarcerated, mentally retarded, lay person — easily could misread. This Court is unable to hear these claims on the merits because, under Supreme Court precedent, their factual bases are deemed not sufficiently similar to the factual bases of the claims he pleaded in his original habeas petition to excuse the lateness of his amended petition.
It is disheartening and frustrating to acknowledge that the ability to pursue one’s constitutional rights — with a life prison sentence hanging in the balance — can turn on such minor distinctions and such a small, understandable mistake made by an incarcerated, mentally retarded, young man with no attorney. Indeed, although these doctrines are grounded in the valid policy interests of efficiency and finality, this decision does not satisfy these interests. Rather than avoiding repetitive, time-consuming litigation, the application of these doctrines has resulted in years of litigation on procedural issues rather than the substance of Pinchon’s claims. I believe that Pinchon’s petition unjustly has been lost in the “Byzantine morass of arbitrary, unnecessary, and unjustifiable impediments” present in our habeas system. Coleman v. Thompson, 501 U.S. 722, 759, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (Blackmun, J., dissenting). I concur in the judgment only because my misgivings about the outcome of this case “do[ ] not ... justify a refusal to respect precedents that remain a part of our law.” Baze v. Rees, 558 U.S. 35, 87, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008) (Stevens, J., concurring in the judgment).