

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

YUSSUF ABDULLE,

                 Petitioner-Appellant,

v.

JEFFREY A. UTTECHT, Warden,

                 Respondent-Appellee.

No. 20-35451

D.C. No. 2:19-cv-00037-MJP

MEMORANDUM*

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Submitted April 14, 2021**
Seattle, Washington

Before: O'SCANNLAIN, GRABER, and CALLAHAN, Circuit Judges.
Concurrence by Judge O'SCANNLAIN

    Petitioner Yussuf Abdulle appeals the district court's denial of his 28 U.S.C.

§ 2254 habeas petition challenging his conviction for promoting commercial

sexual abuse of a minor. Reviewing de novo, <u>Stanley v. Schriro</u>, 598 F.3d 612,

---

    \* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    \*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

617 (9th Cir. 2010), we affirm.

Petitioner argues that he received ineffective assistance because his trial counsel failed to request a limiting instruction that would have advised the jury that testimony that came in through the government's impeachment of the minor could not be considered as substantive evidence of his guilt. But even assuming that Petitioner established that his counsel performed deficiently, Strickland v. Washington, 466 U.S. 668, 687–89 (1984), Petitioner cannot establish prejudice.

Under Washington law, the jury could find Petitioner guilty if he knowingly advanced just one sexual liaison with a minor. Wash. Rev. Code § 9.68A.101(1). The relevant statute defines the advancement of commercial sexual abuse of a minor to include procuring customers and providing persons for the purposes of engaging in commercial sexual abuse. Wash. Rev. Code § 9.68A.101(3)(a). Petitioner knew that the minor engaged in sex work. Critically, Petitioner facilitated one liaison: he gave the minor a phone number for a prospective client, she understood that the purpose of calling the number was to make money, and she called the number. Additionally, Petitioner sent text messages advising another prospective client that the minor would soon turn 18 and was "nice," "cute," and obedient.

The foregoing evidence came in through testimony separate from that which

Petitioner argues should have been subject to a limiting instruction. See Karis v. Calderon, 283 F.3d 1117, 1133 (9th Cir. 2002) (holding that the evidence that was actually presented to the jury must be compared with the evidence that could have been presented had counsel acted appropriately). Although Petitioner highlights some potential ambiguities in the evidence, he has failed to establish that there is a substantial likelihood that the result would have been different. Harrington v. Richter, 562 U.S. 86, 112 (2011). There is not a reasonable probability that a juror would have reached a different conclusion, even if counsel had requested and obtained a limiting instruction. Berghuis v. Thompkins, 560 U.S. 370, 389–90 (2010). Accordingly, counsel's performance did not prejudice Petitioner. Strickland, 466 U.S. at 694–95.

**AFFIRMED**.



*Abdulle v. Uttecht*, No. 20-35451

O'SCANNLAIN, Circuit Judge, with whom CALLAHAN, Circuit Judge, joins, concurring:

While I concur fully in the Memorandum's disposition of this case, I write

separately to address a recurring phenomenon in habeas cases.

Abdulle conceded in the district court that he had procedurally defaulted the

instant claim for ineffective assistance of trial counsel ("IAC")[1] by failing to raise

it on state collateral review. Nevertheless, the district court found that his

procedural default was excused under *Martinez v. Ryan*, 566 U.S. 1 (2012). Neither

party has raised this issue on appeal. Thus, because "in the habeas context, a

procedural default . . . is not a jurisdictional matter," but rather "a defense that the

State is obligated to raise and preserv[e]," we are "not required to raise the issue of

procedural default *sua sponte*." *Trest v. Cain*, 522 U.S. 87, 89 (1997) (internal

quotation marks and citations omitted). However, the district court might have

more easily—and, I believe, *properly*—disposed of Abdulle's habeas petition on

the ground that his procedural default was unexcused.

---

[1] To be clear, Abdulle raised a *different* IAC claim—based on his trial counsel's failure to object to the introduction of evidence gathered from a warrantless search of a cell phone—in his state collateral challenge. Abdulle abandoned such claim in his federal habeas petition, which instead argued that he received IAC when his trial counsel failed to raise a hearsay objection to, or to request a limiting instruction on, B.I.'s inculpating out-of-court statements to Detective Washington. The *instant* IAC claim was never raised by Abdulle in state court.

1

In *Martinez*, the Supreme Court announced what it called a "narrow exception" to the longstanding rule that "an attorney's errors in a postconviction proceeding do not qualify as cause for a [procedural] default." 566 U.S. at 8–9 (referring to *Coleman v. Thompson,* 501 U.S. 722, 753–55 (1991)). That exception (which has turned out not to be so narrow) is that "[i]nadequate assistance of counsel [or lack of counsel, as is the case here] at initial-review collateral proceedings [in state court] may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial," thereby "[a]llowing a federal habeas court to hear" the underlying IAC claim in spite of its procedural default. *Id.* at 9, 14. "To overcome [a procedural] default" under *Martinez*, "a prisoner must . . . demonstrate that the underlying ineffective-assistance-at-trial claim is a substantial one," *id.* at 14—which is to say that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner," *Detrich v. Ryan*, 740 F.3d 1237, 1245 (9th Cir. 2013) (en banc) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).

With respect, I disagree with the district court's finding that Abdulle's underlying trial-IAC claim was in fact "substantial." It strikes me as indisputably clear that Abdulle was not prejudiced by his trial counsel's failure to offer a

limiting instruction on B.I.'s out-of-court statement to Detective Washington,[2] such that his IAC claim indisputably fails under *Strickland v. Washington*. *See* 466 U.S. 668, 691–96 (1984).

## II

But my fundamental concern here is not so much with the district court's perhaps-erroneous reliance on *Martinez* as it is with *Martinez* itself.

This case all-too-perfectly vindicates Justice Scalia's prediction that "as a consequence of [the *Martinez*] decision the States will *always* be forced to litigate in federal habeas, for *all* defaulted ineffective-assistance-of-trial-counsel claims . . . , the validity of the defaulted claim (where collateral-review counsel was not appointed)." *Martinez*, 556 U.S. at 21–22 (Scalia, J., dissenting). Such consequence creates a perverse incentive for convicted criminal defendants to proceed *pro se*—and to sandbag their IAC claims—on state collateral review. That is because, under the normal operation of the Antiterrorism and Effective Death

---

[2] In addition to the factors analyzed in the Memorandum, I find it salient that the factual assertions contained in such statement *also* ultimately came in through B.I.'s in-court, non-hearsay testimony. That is, after B.I. had testified on direct examination that she had asserted such facts to Det. Washington, she testified on cross examination that the account she had given Det. Washington was true and the contradictory account she had given earlier at trial was false. While much of B.I.'s testimony on *direct* was hearsay, and thus inadmissible for purposes beyond impeachment, her testimony on *cross* was clearly non-hearsay, and thus admissible as substantive evidence. Even if Abdulle's trial counsel had requested a limiting instruction on the former, any such limiting instruction would not have applied to the latter.

Penalty Act of 1996 ("AEDPA"), federal courts may grant habeas relief on a claim adjudicated on the merits in state court only if the state-court decision "was contrary to . . . clearly established Federal law, as determined by the Supreme Court," or if the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)–(2). On the other hand, federally reviewable claims that were *not* adjudicated on the merits in state court are reviewed *de novo*. *See Runningeagle v. Ryan*, 825 F.3d 970, 978 (9th Cir. 2016). Thus, under *Martinez*, a federal habeas petitioner who proceeded *pro se* on state collateral review will almost inevitably be allowed an end-run around AEDPA deference. Indeed, that is precisely what has happened here.

As such, this case lays bare the *Martinez* rule's troubling tendency to compromise the principles of comity and federalism that underlie AEDPA deference and the procedural-default doctrine. *See Coleman*, 501 U.S. at 731 ("Because it would be unseemly in our dual system of government for a federal . . . court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts . . . should defer action on causes properly within [their] jurisdiction until the [state] courts . . . have had an opportunity to pass upon the matter." (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982) (internal quotation marks omitted))).

More concretely, this case vindicates Justice Scalia's concern "that [*Martinez*] will . . . put a significant strain on state resources," insofar as "[t]he *principal escape route* from federal habeas—existence of an 'adequate and independent state ground'—has been closed." *Martinez*, 556 U.S. at 22 (Scalia, J., dissenting). But for the existence of the *Martinez* rule, Abdulle's concession that he procedurally defaulted his IAC claim would have been the end of his federal habeas case in district court, there would have been no live merits issue to appeal to this court, and the State of Washington likely would have been spared the burden of preparing for and arguing another appeal.