Filed 6/30/21  P. v. Berry CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Trinity)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DONALD JOSEPH BERRY,<br><br>Defendant and Appellant. | C091103<br><br>(Super. Ct. No. 07F018) |

A jury found defendant Donald Joseph Berry guilty of the second degree murder of Anona Lorraine Wine, among other offenses, and found that he personally used a firearm during the offense.  The trial court sentenced him to an aggregate term of 25 years to life in prison, and his convictions were affirmed on appeal.

1

Defendant petitioned the trial court under Penal Code[1] section 1170.95 for resentencing based on changes to the felony-murder rule and the natural and probable consequences doctrine under recently enacted Senate Bill No. 1437.  (Stats. 2018, ch. 1015, § 4, eff. Jan. 1, 2019.)  The trial court initially appointed the public defender to represent defendant and ordered the People to file a response within 30 days as to why the petition should not be granted.  After receiving the People's response that defendant was not eligible for resentencing, and defendant's pro. per. "traverse," the court denied the petition, finding defendant failed to make a prima facie showing that he fell within the provisions of section 1170.95.  Defendant's appointed counsel did not file any briefing below.

On appeal, defendant argues the trial court violated the mandate of section 1170.95 by failing to ensure that appointed counsel actually participated in the process, and that counsel's ineffective participation violated his constitutional rights to counsel and due process.  The court's failure to ensure appointed counsel's effective participation, defendant argues, constitutes reversible error.  We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

We take the facts from the unpublished opinion we issued in 2009 affirming defendant's convictions in case No. C058321.  (*People v. Berry* (Oct. 9, 2009, C058321) [nonpub. opn.] (*Berry*).)

Wine and defendant lived together and had a stormy relationship.  In September 2005, Wine was involved in a car accident that left her with a traumatic brain injury that affected her speech, memory, and mobility.  Wine was originally cared for by various family members, but sometime in June 2006, Wine moved back in with defendant.

---

[1]     Undesignated statutory references are to the Penal Code.

2

Although Wine had recovered some from her injuries, she still had problems with her speech, balance, and generally with taking care of herself.

At the time of her murder, Wine and defendant lived on a ranch in Hayfork. They shared caretaker responsibilities on the ranch with two brothers, Jerry and Richard A., who also lived on the property in a recreational vehicle.

On the evening of January 23, 2007, Jerry saw Wine and defendant at their house. About an hour later, Jerry went to a local bar for food and drinks. He returned to the ranch to invite defendant and Wine to join him at the bar. He entered their house without knocking, and saw defendant standing over Wine with a shotgun. Defendant was holding the gun as if he had just struck Wine with it. Although Jerry testified he did not see defendant hit Wine with the gun, during a police interview shortly after the incident, Jerry told detectives that he saw defendant hit Wine in the head twice with the butt of a shotgun. Defendant told Jerry that Wine had fallen and he was just helping her get up. Defendant said they would come to the bar.

An hour or so later, defendant arrived at the bar alone with a strange expression on his face that made Jerry feel scared. Defendant stayed for about 20 or 30 minutes and left. After Jerry got home from the bar, his brother Richard left to go to defendant's house. Richard came back and told Jerry that Wine needed help as she was lying on the floor and her pants were wet.

Jerry went into the house, and saw Wine propped up against the refrigerator. Wine's face looked like it had been badly beaten, and she was not breathing. After administering CPR, Jerry drove to a police substation to get help. Before leaving, he had seen defendant with the shotgun and had knocked it out of his hands.

When a deputy reached the house, Wine had a pulse but was not breathing. Her face was black, her right eye was badly bruised, and she had a swollen lip. She never regained consciousness and was declared brain dead the next day.

3

Wine's cause of death was multiple blunt force injuries to her head. She had three or four contusions on the top of her head, indicating as many blows to the top of the head. A large chunk of her hair had been pulled out, and she had numerous other bruises and contusions on other parts of her body, some from older injuries.

Defendant testified that he and Wine argued when he returned from the bar. He claimed she jumped up and thrust a pair of scissors at him, which "set him off" considering everything he had done for her. Defendant lost his temper, grabbed Wine by the hair, spun her around, and pushed her hard, pulling a clump of her hair out. At some point after pushing her down, defendant noticed Wine was lying on the floor and not getting up even though her eyes were open. He reached down and slapped her several times because he believed she was faking unconsciousness. She did not respond.

A jury found defendant not guilty of the first degree murder of Wine (§§ 187, 189), but guilty of second degree murder (§ 187), inflicting a corporal injury on a cohabitant (§ 273.5, subd. (a)), and assault with a firearm (§ 245, subd. (a)(2)). The jury also found true special allegations that defendant personally used a firearm (§§ 12022.53, subd. (b) & 12022.5, subd. (a)(1)) and personally inflicted great bodily injury. He was sentenced to 25 years to life in prison.

Defendant appealed his convictions, arguing: (1) the trial court improperly instructed the jury on mutual combat and felony murder, (2) erroneously permitted an expert to give testimony concerning battered woman's syndrome, (3) erroneously excluded defendant's statement to the defense investigator that the victim had attacked him, and (4) improperly imposed an upper term sentence in violation of his Sixth Amendment right to a jury trial. We found it was error to give a felony-murder instruction, but concluded the error was harmless because the evidence presented during trial left no reasonable doubt that the jury made the findings necessary for implied malice to support a second degree murder conviction. We rejected defendant's remaining claims, and affirmed the judgment in full.

4

In July 2019, defendant filed a petition for resentencing under section 1170.95. Defendant declared in his petition that the prosecution proceeded under a theory of felony murder or murder under the natural and probable consequences doctrine, that he was convicted of first degree or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine, and that he could not now be convicted of first or second degree murder because of changes to section 188 or 189 made effective January 1, 2019. He also checked a box stating he was convicted of second degree murder under the natural and probable consequences doctrine or under the second degree felony-murder doctrine and he could not now be convicted of murder because of changes to section 188 effective January 1, 2019. Defendant requested appointment of counsel during the resentencing process.

In August 2019, the court issued a ruling appointing public defender Kenneth Miller as defendant's counsel, and ordering the People to file a return within 30 days to show cause why the petition should not be granted. The return was to address any procedural issues raised by the petition as well as the merits of defendant's claim. Defendant was permitted to file a traverse within 30 days of the People's return.

Three days later, on August 15, 2019, the People filed an initial response to defendant's petition, contending defendant failed to establish a prima facie case that he came within the provisions of section 1170.95 or that he was entitled to relief. The People noted the record of conviction, including this court's prior opinion in *Berry* affirming defendant's convictions, showed he was the actual killer who acted with implied malice.

Appointed counsel Miller did not file a response to the People's opposition, but in October 2019 (more than 30 days after the People filed their return), defendant filed a traverse in pro. per. arguing that Senate Bill No. 1437 was intended to rectify situations, like his, where a jury was improperly instructed on a felony-murder theory. Because this court in *Berry* found that the trial court should not have given a felony-murder instruction

5

since defendant's corporal injury and assault with a firearm offenses were assaultive in nature and thus merged with the homicide, defendant argued in his resentencing petition that he was entitled to relief.[2]

On October 15, 2019, the trial court issued an order denying defendant's petition. According to the court's ruling, after reviewing the petition, the People's initial response, defendant's traverse, and this court's opinion in *Berry*, the court concluded that defendant failed to make a prima facie showing that he fell within the provisions of section 1170.95. Appointed counsel Miller filed a timely notice of appeal on defendant's behalf.

## DISCUSSION

Defendant contends the trial court prejudicially erred by denying his petition without first ensuring appointed counsel meaningfully participated in the briefing process on the petition. The trial court's failure to ensure counsel effectively participated, he argues, violated his constitutional rights to counsel and due process, requiring reversal. He further contends the absence of effective counsel constituted structural error requiring reversal. We disagree and find that any alleged error is harmless.

Senate Bill No. 1437 (2017-2018 Reg. Sess.) was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill No. 1437 achieves these goals by amending section 188 to require that a principal act

---

[2]    Defendant's traverse included a section discussing additional evidence that could be presented at a hearing on the petition; such evidence included, among other things, various portions of the trial transcripts or expert testimony where defendant claimed the jury was not presented with all the facts about Wine's prior car accident and a forensic diagram that, according to him and contrary to the jury's verdict, showed beyond a reasonable doubt that a "vicious" assault with a shotgun never happened.

with express or implied malice (§ 188, as amended by Stats. 2018, ch. 1015, § 2), and by amending section 189 to state that a person can be liable for felony murder only if (1) the "person was the actual killer"; (2) the person, with an intent to kill, was an aider or abettor in the commission of murder in the first degree; or (3) the "person was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e), as amended by Stats. 2018, ch. 1015, § 3.)

Senate Bill No. 1437 also added section 1170.95 to provide the resentencing petition process for a "person convicted of felony murder or murder under a natural and probable consequences theory." (§ 1170.95, subd. (a).) After a defendant submits a petition and the court performs an initial review for missing information, subdivision (c) of section 1170.95 provides: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor's response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

Appellate courts are divided on if trial courts may review the record of conviction and deny a section 1170.95 petition before appointing counsel. (Compare *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1138-1140 [trial courts may review record of conviction and need not first appoint counsel], rev. granted March 18, 2020, S260598, with *People v. Cooper* (2020) 54 Cal.App.5th 106, 118-119, 123 [disagreeing with *Lewis*], rev. granted Nov. 10, 2020, S264684.) The Supreme Court has granted review on these issues. (*Lewis, supra*, S260598.) Here, the trial court appointed defendant counsel. The petition was denied after the filing of the People's initial response and defendant's traverse.

We need not conclusively determine the requirements of section 1170.95, subdivision (c) because any error in the trial court's procedures would be harmless even under the more stringent beyond a reasonable doubt standard. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711].) As we noted in *Berry*, any error in giving a felony-murder instruction during defendant's trial was harmless "because the evidence in this case left no reasonable doubt that the jury made the findings necessary for implied malice to support a conviction of second degree murder." (*Berry, supra*, C058321, at pp. 2, 8-14.) Because the jury necessarily found conscious disregard for life malice given their verdicts on the corporal injury and assault with a firearm counts (*Berry,* at pp. 12-14), defendant could still be convicted of second degree murder even after the modifications to sections 188 and 189 under Senate Bill No. 1437. The jury found that defendant actually killed Wine with implied malice. (*Berry,* at pp. 1-2.) This renders any alleged error by the trial court harmless because it is beyond a reasonable doubt that obtaining briefing from appointed counsel or holding a hearing would not have changed his lone role in her death, the jury's findings, and defendant's ineligibility.

We likewise reject defendant's contention that the court's denial of his petition before ensuring appointed counsel had effectively participated in the process outlined in section 1170.95 denied him his constitutional rights to counsel. Defendant had no constitutional right to counsel at this stage of the section 1170.95 proceeding. (*Coleman v. Thompson* (1991) 501 U.S. 722, 752-753 [115 L.Ed. 640, 671] [there is no constitutional right to an attorney in state postconviction proceedings; consequently, where there is no constitutional right to counsel there can be no deprivation of effective assistance]; *In re Clark* (1993) 5 Cal.4th 750, 780 [due process demands appointment of counsel only if a petition attacking the validity of a judgment states a prima facie case leading to issuance of an order to show cause] superseded by statute on other grounds as stated in *Briggs v. Brown* (2017) 3 Cal.5th 808.) Section 1170.95 contemplates appointed counsel's involvement only after a prima facie showing a petitioner "falls

8

within the provisions of this section." (§ 1170.95, subd. (c).) Because the trial court correctly ruled that, as a matter of law, defendant does *not* fall within the provisions of section 1170.95, defendant had no due process or liberty interest in having counsel appointed, or in having counsel file a brief below. (See *In re Jesusa V.* (2004) 32 Cal.4th 588, 626 [rejecting a procedural due process claim because the court could "say with confidence that '[n]o other result was possible' "].)

DISPOSITION

The trial court's order denying defendant's section 1170.95 petition is affirmed.


                                        /s/
                              _____
                              BLEASE, Acting P. J.



We concur:


      /s/
_____
HOCH, J.


      /s/
_____
RENNER, J.

9